IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| REGINALD HOLLEY, | : |
| Plaintiff, | : |
| VS. | : |
| | :    7 : 10-CV-65 (HL) |
| WARDEN DANSFORTH, *et al.*, | : |
| Defendants. | : |

**ORDER AND RECOMMENDATION**

Presently pending in this *pro se* prisoner action brought pursuant to 42 U.S.C. § 1983 are Defendants' Motion to Dismiss, and Plaintiff's Motion to Hold Defendants in Contempt. (Docs. 27, 47).

**Background**

Plaintiff filed this action alleging that Defendants, employees of Valdosta State Prison ("VSP") at the time of the alleged offense, acted with deliberate indifference to a substantial risk of harm to Plaintiff, violating his Eighth Amendment rights. (Doc. 2). Plaintiff alleges that on January 21, 2010, while incarcerated at VSP, Defendant Weston[1] asked Plaintiff to identify the prisoners who attacked another inmate. Plaintiff states that after he identified the inmates and they were transferred to a different facility, Defendant Maine told Defendant Weston that Plaintiff would need to be transferred, rather than returned to general population, because Plaintiff's life was in danger as he had been labeled a "snitch".

---

[1] Plaintiff initially named Defendant Sgt. "Westly" as a Defendant who allegedly acted with deliberate indifference to a substantial risk of harm to Plaintiff; however, defense counsel brings a Motion to Dismiss on behalf of Sergeant Robert "Weston". After receiving Defendants' Motion to Dismiss and supporting documents, Plaintiff references Defendant Weston in place of Defendant Westly. (Doc. 29). As both parties appear to be referring to the same Defendant, the Court will assume the correct Defendant is Defendant Sgt. Robert Weston.

Plaintiff maintains that he told Defendant Maine that he feared for his life and Defendant Maine explained that he was trying to get Plaintiff transferred.  Plaintiff also alleges that he was threatened by several inmates, and so Plaintiff wrote to Defendants Maine, Dansforth, Philbin, and Ogletree to notify them of his concern for his safety.

Plaintiff states that in mid-April of 2010 he was placed back in general population, and again wrote to Defendant Maine stating that he feared for his safety because he was placed in the same yard and around the same inmates that had threatened to kill Plaintiff for "snitching."  According to Plaintiff, on May 26, 2010, five inmates came into Plaintiff's room "with knives drawn."  Plaintiff alleges that an inmate hit Plaintiff on the head with a lock and kicked him in the face several times.  As a result of the attack, Plaintiff explains that his nose was broken and he received four staples in his head.

Defendants filed this Motion to Dismiss on November 22, 2010. (Doc. 27).  Plaintiff responded on December 6, 2010. (Doc. 32).  On April 26, 2011, the Court granted Plaintiff an extension of discovery allowing Plaintiff to propound discovery on Defendants regarding the issue of exhaustion only. (Doc. 36).  Plaintiff was given fourteen days after Defendants served discovery responses to file a supplemental response to Defendants' Motion to Dismiss.  On July 11, 2011, Plaintiff filed a supplemental response to Defendants' Motion to Dismiss. (Doc. 41).  Due to a clerical error, Defendants did not serve discovery responses until July 20, 2011.  (Doc. 43).  As a result of the error, the Court allowed Plaintiff until August 8, 2011 to file any further supplemental response to Defendants' Motion to Dismiss, and allowed Defendants to file any desired supplemental reply within fourteen days from the date of Plaintiff's filing.  (Doc. 44).  Defendants filed their reply to Plaintiff's July 11, 2011 response on July 25, 2011. (Doc. 45).  On July 29, 2011, Plaintiff filed an additional supplement to his response.  (Doc. 46).

*Motion to Dismiss (Doc. 27)*

A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 129 S.Ct.1937,1949 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

In regard to exhaustion of administrative remedies, the PLRA mandates that all prisoners wishing to bring suits pursuant to § 1983 based on conditions of confinement violations must exhaust all available administrative remedies prior to filing a federal action. The Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (a).

In order to satisfy the exhaustion requirement, an inmate must fully pursue all available administrative remedies, including pursuing and completing all levels of appeal. *Moore v. Smith*, 18 F. Supp. 2d 1360, 1363 (N.D.Ga. 1998); *Harper v. Jenkin*, 179 F.3d 1311 (11th Cir. 1999) (inmate who failed to seek leave to file an out-of-time grievance failed to exhaust his administrative remedies as required by the PLRA). "An inmate must use all steps in the administrative process and comply with any administrative deadlines and other critical procedural rules before exhaustion is proper." *Woodford v. Ngo*, 548 U.S. 81, 89-92 (2006).

The Eleventh Circuit has held that

> deciding a motion to dismiss for failure to exhaust administrative

> remedies is a two-step process. First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. . . . If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

Plaintiff states in his Complaint that he filed "numerous grievances . . . but no one responded to my grievance". (Doc. 2). In Plaintiff's response to Defendant's Motion to Dismiss, Plaintiff maintains that "on [February 25, 2010], [he] filed an informal grievance in regards to this issue, and [his] grievance was rejected." (Doc. 32). Finally, Plaintiff maintains in his initial supplemental response that he filed another informal grievance that was rejected. (Doc. 41). The Defendants contend that Plaintiff failed to exhaust the administrative remedies available to him regarding the claims underlying this lawsuit. (Doc. 27-1). Both Plaintiff and Defendant agree that Plaintiff filed informal grievances that were rejected. Thus, a review of the factual allegations in Defendants' Motion and Plaintiff's responses do not appear to reveal a conflict.

However, construing Plaintiff's pleadings liberally, it appears Plaintiff could be asserting in his Complaint that he was unable to exhaust his administrative grievance, because "he filed numerous grievances . . . but no one responded". (Doc. 2). As it is unclear if Plaintiff is alleging that he was unable to exhaust administrative remedies, in an abundance of caution, the Court will proceed with the second step of the analysis and make specific findings in order to resolve any possible disputed factual issues.

Complete administrative exhaustion is a precondition to filing a lawsuit, and in order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process.

*Woodford*, 548 U.S. at 88, 92. To remedy a concern, Plaintiff is required to complete a three (3) step grievance process consisting of an informal grievance, a formal grievance, and an appeal. Georgia Dep't of Corrections SOP IIB05-001 § VI.

Defendants contend, and support with a declaration from the Grievance Coordinator at VSP, that Plaintiff did not exhaust any grievances regarding the allegations stated in the Complaint. (Doc. 27-2, Singleton Declaration). The declaration establishes the presence of a grievance system at VSP, and that Plaintiff filed numerous grievances during his confinement at VSP. (*Id.*). Defendants provided the Court with copies of Plaintiff's grievances that relate to the alleged claims. (Docs. 27, 45).

On February 25, 2010, Plaintiff filed informal grievance number 43126 stating that he wanted to be transferred to a different facility, as promised by Defendant Maine. (Doc. 27-6). He also alleged that he was being punished for an attack on an inmate even though Defendants Maine and Weston told Plaintiff that he was innocent. (*Id.*). The informal grievance was denied because it was filed out of time, and Plaintiff did not file a formal grievance or an appeal. (*Id.*).

Plaintiff filed informal grievance number 46754 on April 5, 2010 alleging that his life was in danger and that Defendant Maine, Defendant Dansforth, and non-party Warden Orr told Plaintiff that he was on the transfer list, yet he had not been transferred. (Doc. 27-7). The informal grievance was rejected because Plaintiff was grieving a non-grievable issue. (*Id.*). Plaintiff did not file a formal grievance or an appeal. (*Id.*).

After being transferred from VSP, Plaintiff filed informal grievance number 56549 on July 1, 2010 alleging that on May 26, 2010 an inmate attacked Plaintiff, hitting Plaintiff in the head with a lock and breaking Plaintiff's nose. (Docs. 27-2, Singleton Declaration; 27-5). The grievance was rejected because it was filed out of time, and Plaintiff did not file a formal grievance or an appeal. (*Id.*).

In Plaintiff's Motion for Discovery, Plaintiff submitted a copy of a grievance appeal form for grievance number 46861; however, there was no indication that this grievance appeal form had been filed. (Doc. 29-2). The Court granted Plaintiff's Motion, allowing Plaintiff to serve discovery on Defendants and file a supplement to Plaintiff's Response to Defendants' Motion to Dismiss. (Doc. 36). In the order, the Court specifically referenced concerns regarding grievance numbers 43817 and 46861. Defendants have provided copies of these two grievances, while Plaintiff has failed to address these two grievances.

Plaintiff filed informal grievance number 43817 on March 8, 2010 alleging that he was served meat on his breakfast tray even though he is on a vegan diet. (Doc. 45-2). This informal grievance was denied and Plaintiff filed a formal grievance. Plaintiff appealed the formal grievance to the Commissioner's office, and it was denied; thus, grievance number 43817 was exhausted.

Plaintiff filed informal grievance number 46861 on March 31, 2010 complaining that shift officers were failing to complete their routine rounds, and as such, he was feeling unsafe. (Doc. 45-1). The grievance was denied, and Plaintiff filed a formal grievance. Plaintiff's formal grievance was denied on May 26, 2010. On June 14, 2010, grievance number 46861 was closed at the institutional level because Plaintiff did not return his appeal form with the grievance attachments. (*Id.*). Plaintiff provided a copy of the grievance appeal form for grievance number 46861, which complains of the facts alleged in this case, not that the shift officers were failing to complete their rounds. (Doc. 29-2, p. 2). The date on Plaintiff's copy of the grievance appeal form is dated March 18, 2010, which is about two weeks before he filed informal grievance 46861.

While grievance number 43817 was exhausted, this grievance does not relate to the present case. As the grievance does not address the facts underlying the allegations contained in

Plaintiff's Complaint, grievance number 43817 does not satisfy the PLRA's exhaustion requirement regarding the claims raised in this Complaint.  *See* 42 U.S.C. § 1997e(a).  Additionally, grievance number 46861 does not relate to the underlying facts contained in the current lawsuit, and further, the formal grievance was not appealed.  The Court is not persuaded by Plaintiff's submitted copy of the appeal form because the appeal is dated prior to the date on the informal grievance, there is no evidence to show that the appeal form was filed, the appeal form contains different allegations than the corresponding informal and formal grievances, and Plaintiff has failed to provide the Court with any explanation regarding this appeal form.  As grievance number 46861 was not exhausted and does not address the allegations contained in the Complaint, it does not satisfy the PLRA's exhaustion requirement.  *Id.*

Both informal grievance number 43126 and informal grievance number 56549, which appear to relate to the underlying facts of this Complaint, were rejected as being filed "out of time".  Plaintiff did not file an appeal regarding either grievance, nor did he show "good cause" as to why the grievances were untimely.  If a grievance is denied because it is untimely, the inmate is still required to appeal the decision within the prison system.  *Mason v. Bridger*, 261 Fed. Appx. 225, 229 (11th Cir. 2008);  *Harper*, 179 F.3d at 1311.  An inmate is allowed to file an out of time grievance if "good cause" is shown, and can therefore exhaust his administrative remedies regardless of the grievance being untimely.  *Harper*, 179 F.3d at 1311.  Thus, a plaintiff who fails to seek leave to file an out-of-time grievance fails to exhaust his administrative remedies as required by the PLRA.  *Id.*  Plaintiff had the opportunity to exhaust his administrative remedies by seeking to file an out-of-time grievance, yet failed to do so.   Thus, Plaintiff failed to exhaust grievance numbers 43126 and 56549.

In informal grievance 46754, Plaintiff grieved a routine housing assignment transfer, and mentioned that his life was in danger. (Doc. 27-7).  The grievance was rejected because a routine

7

housing transfer is not a grievable issue. Under the Georgia Standard Operating Procedures, "[a]t the completion of his Informal Grievance, the inmate may request from his/her counselor a Formal Grievance Form." Georgia Dep't of Corrections SOP IIB05-001 § VI. Further, all formal grievances may be appealed. *Id.* There is nothing that prevented Plaintiff from formally grieving the denial of informal grievance number 46754, nor does Plaintiff assert that he was unable to exhaust the grievance. (*See* Docs. 2, 32).

Plaintiff is required to exhaust a grievable issue regardless of the fact that a grievance was rejected as "non-grievable." *See Blankenship v. Owens*, 2011 WL 610967, *5 (N.D. Ga. 2011) (plaintiff failed to exhaust administrative remedies when defendants rejected a grievable issue as non-grievable); *Blackerby v. McNeil*, 2008 WL 5210351, *2 (S.D. Ga. 2008) (plaintiff did not exhaust administrative remedies when he failed to file a formal grievance and appeal regarding his informal grievance that was rejected as a non-grievable issue). Plaintiff's Complaint alleges that Defendants were deliberately indifferent to a substantial risk of harm to Plaintiff. A claim of deliberate indifference must be exhausted prior to filing suit. *Thomas v. Bryant*, 614 F.3d 1288, 1303 n. 15 (11th Cir. 2010). As the claims alleged in Plaintiff's Complaint are grievable, Plaintiff failed to exhaust grievance 46754 when he did not file a formal grievance or an appeal.

In each grievance relating to the allegations contained in the present Complaint, Plaintiff only completed the first step of the grievance process. Plaintiff failed to exhaust the administrative remedies available to him because he did not file formal grievances and appeals regarding the grievances that related to his claims of deliberate indifference against the Defendants. The Court finds that the Plaintiff has not exhausted the claims underlying this lawsuit, in that, he failed to utilize the available administrative remedies to grieve the alleged offenses of the Defendants. Accordingly, it is the recommendation of the undersigned that Defendants' Motion to Dismiss be **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

*Motion to Hold Defendants in Contempt (Doc. 47)*

Plaintiff filed this Motion requesting the Court hold Defendants in contempt for submitting a false statement to the Court in Defendants' Response to Plaintiff's Motion to Compel. In Defendants' Response to Plaintiff's Motion to Compel, Defendants stated that they served Plaintiff with discovery responses on June 8, 2011. (Doc. 39). Defendants later realized that, due to a clerical error, Defendants' discovery responses were not sent to Plaintiff's current address. (Doc. 43). On July 20, 2011, Defendants sent their discovery responses to Plaintiff's correct address. (*Id.*).

Defendants provided the Court with a copy of the discovery responses from June 8, 2011 that contains the incorrect mailing address. (Doc. 39-1). The Court finds that Defendants did not intentionally mislead the Court, and in fact, did mail discovery responses on June 8, 2011, albeit to the wrong address. Accordingly, Plaintiff's Motion to Hold Defendants in Contempt is hereby **DENIED**.

**SO ORDERED AND RECOMMENDED**, this 15th day of August, 2011.

*s/ THOMAS Q. LANGSTAFF*

**UNITED STATES MAGISTRATE JUDGE**

llf